13-0733 — *State of West Virginia ex rel. State of West Virginia v. The Honorable Robert A. Burnside, Jr., Judge of the Circuit Court of Raleigh County, and Richard E. Hardison, Jr.*

**FILED**

**April 17, 2014**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Benjamin, Justice, concurring:

I agree with the majority opinion in this case. I write separately to emphasize that today's holding fully protects legitimate claims of attorney-client privilege. Indeed, when viewed within the constitutional, statutory and common law framework in which electronic surveillance by the state must operate in West Virginia, I believe this decision not only ensures the preservation of important personal and professional privileges, but also recognizes the importance of the state's duty to properly investigate and prosecute serious criminal misconduct, thereby protecting our families and communities.

I cannot fault my dissenting colleague for raising concerns about the importance and preservation of the attorney-client privilege. Indeed, it is, I suggest, a good thing in today's environment for judges to closely scrutinize any state action which may impair the legitimate expectation of privacy citizens may have in the day-to-day performance of their lives. Here, however, I simply disagree with the dissenting opinion about the extent to which today's holding will impair the legitimate exercise of the attorney-client privilege, particularly when viewed within the framework of West

1

Virginia's electronic surveillance jurisprudence and the many protections for individual rights and privileges found within this jurisprudence.

The dissenting opinion suggests a series of horribles which may emerge as a result of the majority's interpretation of W. Va. Code § 62-1D-9(d). The dissent posits that the majority's holding will "steadily and relentlessly erode" "the indispensable trust that must exist between attorneys and clients." I disagree. When read along with the other protections provided by the entirety of the West Virginia Wiretapping and Electronic Surveillance Act ("the Act"), W. Va. Code §§ 62-1D-1 to -16, I suggest that there is no likelihood—absent felonious misconduct on the part of law enforcement—that harm will befall the attorney-client privilege.

The dissenting opinion posits four scenarios, each having in common a paralegal employed by a large West Virginia law firm who engages in illegal activity. In all four scenarios, "law enforcement has probable cause and places a device to intercept oral conversations/telephone calls/email (pick one or more) in paralegal's office."

I suggest that the dissenting opinion's initial scenario is missing a crucial element of judicial oversight in its fact pattern: Law enforcement could only have lawfully placed an electronic surveillance device in the paralegal's office if it had already received a specific authorization to do so from one of five circuit judges appointed by the West Virginia Supreme Court of Appeals. W. Va. Code § 62-1D-11; W. Va. Code § 62-

2

1D-7. Such judicial oversight is an important aspect to the protections contained with the jurisprudence of electronic surveillance devices in West Virginia. Before one of the five circuit court judges may issue an authorization order to law enforcement, the court must find that

> (1) There is probable cause to believe that one or more individuals are committing, has committed, or are about to commit one or more of the particular offenses enumerated in section eight [§ 62-1D-8] of this article;
>
> (2) There is probable cause for believe that particular communications concerning such offense or offenses will be obtained through the interception;
>
> (3) Normal investigative procedures have been tried and have failed and reasonably appear to be unlikely to succeed if attempted again, or that to do so would be unreasonably dangerous and likely to result in death or injury or the destruction of property; and
>
> (4) There is probable cause to believe that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of the offense or offenses are leased to, listed in the name of, or commonly used by this person.

*Id.* § 62-1D-11(c). If an authorization order does issue, the circuit court judge must then narrowly tailor that order, specifying

> (i) the identity of the person, if known, whose communications are to be intercepted; (ii) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted, (iii) a particular description of the type of communication sought to be intercepted and a statement of the particular offense to which it relates, (iv) the identity of members of the Department of Public Safety [West Virginia State Police] authorized to intercept the communications and of the person authorizing

3

the applications and (v) the period of time during which the interception is authorized, including a statement as to whether or not the interception automatically terminates when the described communication is first obtained.

*Id.* § 62-1D-11(d)(1). "Every order and extension thereof shall contain a provision that the authorization to intercept . . . be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this article and terminate upon attainment of the authorized objective." *Id.* § 62-1D-11(e). Furthermore, after the order is issued, reports must "be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception." *Id.* § 62-1D-11(f).

As the above sampling of the Act makes clear, the courts of our State play a significant and continuing role in the ordering of and supervising of surveillance obtained by the use of electronic devices under the Act. Our decision today does not empower law enforcement to place surveillance devices in law offices on a whim; law enforcement must make a strong case for the need of that surveillance, and the circuit court must then grant permission for that surveillance, subject to specific limitations and supervision, before surveillance may take place.

Looking more specifically at the four scenarios presented in the dissenting opinion, a common thread is apparent as to each: the investigating law enforcement officer reveals non-criminal information gathered from the surveillance that is not the

subject of the surveillance. *Under the Act, such misbehavior would be a felony.* The disclosure of information obtained through surveillance is only permitted "to the extent that the disclosure is required for *proper performance of the official duties* of the officer making or receiving the disclosure." *Id.* § 62-1D-9(a) (emphasis added). When a law enforcement officer shares information gathered from surveillance and it is not in furtherance of the proper performance of that officer's official duties, the officer "is guilty of a felony." *Id.* § 62-1D-3(b). The officer would also be subject to civil liability. *Id.* § 62-1D-12.

In my view, the weighty disincentives and protections which are part of the framework of electronic surveillance jurisprudence in this state, as well as the on-going judicial oversight present in such cases, are more than adequate measures to safeguard individual privileges and rights while ensuring that the State may properly do its duty to investigate and prosecute serious criminal misconduct, thereby protecting our families and communities. I therefore concur.